# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| JOHN A. OLIVEIRA and | ) | Case No. 04-21810-TLM |
| MALISSA A. OLIVEIRA, | ) | |
| dba Diversified Industries & | ) | |
| Investments, Inc., | ) | |
| | ) | |
| Debtors. | ) | MEMORANDUM OF DECISION |
| | ) | |
| _____ | ) | |

## INTRODUCTION

The question before the Court in this former chapter 11 case is whether the employment of attorney Stephen McCrea ("Counsel"), by debtors in possession John and Malissa Oliveira ("Debtors") may properly be approved under § 327(a). The Office of the U. S. Trustee ("UST") says no. This matter, and a related request for approval of compensation under § 330, were taken under advisement at the conclusion of a hearing on March 1, 2005.

The Court concludes the UST is correct and Counsel's employment cannot be approved. This also means that the requested compensation cannot be allowed.

MEMORANDUM OF DECISION - 1

This Decision constitutes the Court's factual findings and legal conclusions. Fed. R. Bankr. P. 9014, 7052.

**BACKGROUND AND FACTS**

A voluntary petition for chapter 11 relief was filed by Debtors on December 10, 2004. Doc. No. 1.[1] On that same date, Counsel filed a Rule 2016(b) disclosure indicating that he had been paid $3,699.00 (inclusive of the $839.00 filing fee); that nothing further was owed; that the payor was Debtor's mother; and that Debtors granted Counsel a "common law lien on the balance of the funds" tendered to him. Doc. No. 2.

A few days later, Debtors applied for Court approval of their employment of Counsel under § 327(a). Doc. No. 6. This application indicated that Counsel had actually been paid $7,879.00 as a retainer; that $2,860.00 was paid from the retainer for bankruptcy-related services through the date of filing; and that the $839.00 filing fee was paid from the retainer. This left $4,180.00 in the retainer.[2] Additionally, the application indicated that another $2,480.00 had been paid to Counsel, pre-bankruptcy, for legal services between April 21 and November 8,

---

[1] Unless otherwise indicated, all references to "Doc. No." are to matters shown on the Court's docket in the instant case, No. 04-21810-TLM.

[2] The Rule 2016(b) statement was never amended to make it accurate and consistent with the application. It should have been.

2004, related to a foreclosure.[3] The application further noted Counsel's claim of a "common law consensual lien" on the funds left in his trust account at filing.[4]

On the December 10 petition date, Debtors also filed a motion seeking authority to use cash collateral. Doc. No. 3. It noted Debtors had quite limited funds on hand and a need for approximately $37,000 in monthly cash flow, and they proposed using cash collateral that secured creditors Mountain West Bank, the Internal Revenue Service, and the Idaho State Tax Commission to meet their needs.

Debtors' business involved gravel processing and heavy construction. In significant degree, their business was conducted through a separate, closely-held corporation, Diversified Industries & Investments, Inc. ("Diversified"). Debtors indicated Diversified as a "dba" on their petition in this case. They concede that this was insufficient to make Diversified a joint debtor. *See Fitzgerald v. Hudson (In re Clem)*, 82 I.B.C.R. 205 (Bankr. D. Idaho 1982); *see also* LBR 1002.1 (Advisory Committee Notes).

---

[3] The statement of financial affairs, at the response to question 9, indicated that Counsel had been paid $2,480 related to the foreclosure and $2,860 for bankruptcy related services. Doc. No. 1.

[4] The verified statement of Counsel required under Rule 2014(a) contained none of these disclosures or details. It did not disclose that he had been a creditor pre-petition and paid. It did not disclose that he claimed to be a secured creditor holding a lien on the retainer. It recited only that Counsel felt he had no adverse interest to Debtors, and had no connection with creditors, parties in interest or the UST, with the exception he had provided advice to a creditor but referred the party to other counsel. *See* Doc. No. 7.

MEMORANDUM OF DECISION - 3

On December 14, Debtors sought an order "substantively consolidating" Diversified's nonbankruptcy estate with their chapter 11 estate. Doc. No. 8; *see also In re Bonham*, 229 F.3d 750 (9th Cir. 2000). This request generated an immediate objection from the UST. *See* Doc. No. 10. On December 16, the day before hearing on this motion, Diversified filed its own chapter 11 case, No. 04-21851-TLM.

Counsel represented Diversified in this bankruptcy filing. He advised the Court at the March 1 hearing that, following consideration of the several questions involved in consolidating a chapter 11 debtor with a non-debtor entity, Debtors decided that their closely-held corporation should also file bankruptcy and then the consolidation of the two chapter 11 estates could be pursued. Counsel also advised at this hearing that, in his professional opinion, the corporate separateness of Diversified could not be successfully maintained if challenged and that a veil-piercing or alter ego assertion would be successful.

Diversified, in its case, also sought court approval for its employment of Counsel under § 327(a). *See* Case No. 04-21851-TLM, Doc. No. 3. That application indicated that Counsel had been paid nothing as a retainer and nothing for the preparation of the petition, schedules, statements and other documents involved in the filing. It also indicated, however, that Counsel would charge Diversified $200.00 per hour for future services. *Id.*

MEMORANDUM OF DECISION - 4

The Rule 2014(a) verified statement of Counsel filed in support of this application asserted that he did "not have an adverse position to the debtor-in-possession" and had no connection with any creditors or parties in interest "except for John and Malissa Oliveira, the shareholders, directors and officers of said corporation[.]" Case No. 04-21851-TLM, Doc. No. 4.[5]

On December 30, Diversified filed a motion to consolidate its case with Debtors' chapter 11 case. Case No. 04-21851-TLM, Doc. No. 6. An "amended" motion for substantive consolidation was filed the same day in Debtors' case. *See* Doc. No. 19.

By the time of hearing on February 1, Debtors had abandoned hope of reorganizing and did not oppose the UST's § 1112(b) motion. The case was converted to a chapter 7 that date. The motion for substantive consolidation was effectively withdrawn. *See* Doc. No. 31 (minute entry). Diversified met a similar fate. *See* Case No. 04-21851-TLM, Doc. No. 18 (minute entry).

Following conversion of the two cases, Debtors renewed their request that their employment of Counsel as their chapter 11 attorney be approved. This request, and the UST's objection were set for hearing. *See* Doc. Nos. 29, 34, 38. Counsel also filed a request for compensation under § 330, setting that for

---

[5] Counsel never amended his Rule 2014(a) verified statement in Debtors' case to reflect that he represented the chapter 11 corporation. A "supplemental" affidavit and statement was filed on February 7, but it addressed the question of the payment of the debt to Counsel for the foreclosure-related legal services prior to filing. *See* Doc. No. 38.

MEMORANDUM OF DECISION - 5

simultaneous hearing. Doc. Nos. 35, 36; *see also* Doc. No. 37 (UST objection). The issues were briefed, *see* Doc. Nos. 43, 47, and heard on March 1.

At this hearing, Counsel made clear that the application of Diversified seeking Court approval of his employment in that case was being withdrawn. He also indicated that he had never received any compensation from Diversified, or from Debtors or any other party or entity, for the legal work he performed for Diversified. The UST did not contest these representations.

The sole debate was whether Counsel's employment by Debtors in the instant case could be approved.[6]

## DISCUSSION AND DISPOSITION

The UST contends that Debtor's employment of Counsel cannot be approved under § 327(a) which requires that an estate's professional "not hold or represent an interest adverse to the estate" and be a "disinterested" person.[7] The UST does not contend that Counsel is not disinterested, a term defined in

---

[6] At the March 11 hearing, the UST made it clear that the basis for its objection to the compensation request was the question of Counsel's eligibility under § 327(a). The UST did not dispute that the services were rendered as claimed or that the amount charged therefore was reasonable. The Court also reviewed the § 330 application and had no concerns on either score. Thus, were it possible to approve Counsel's employment under § 327(a), the amounts sought in the application for compensation would be allowable under § 330 and be entitled to treatment under § 503(b)(2) in a second rank behind chapter 7 administrative expenses as provided in § 726(b).

[7] The UST's objections also raised a concern over the pre-bankruptcy payment of Counsel's bills for services related to foreclosure, indicating that this payment may have been a preference and, thus, disqualifying. *See*, *e.g.*, *In re Pillowtex, Inc.*, 304 F.3d 246 (3d Cir. 2002). The contention was abandoned by the UST at the March 1 hearing.

MEMORANDUM OF DECISION - 6

§ 101(14). Rather, the UST argues that Counsel represented an interest adverse to the estate – that of Diversified (and, within a few days of the initial application, Diversified's bankruptcy estate) – and was therefore disqualified from employment as Debtors' counsel. The UST also argues that Counsel's assertion of a "common law lien" in the retainer, particularly given Debtors' requests for use of cash collateral, reflected an adverse and disqualifying interest.

Counsel argues that, whatever merit there might be to the UST's positions under the language of § 327(a) and the case law interpreting and applying it, the Court should nevertheless allow Debtors' employment of Counsel as their chapter 11 attorney. In Counsel's view, the adversity of interest or conflict between Debtors' estate and Diversified's estate was technical and temporary. He indicates that, if substantive consolidation were granted, there would be but one lawyer. If such consolidation were denied, he concedes that separate counsel would be absolutely required, and says he would have sought out replacement counsel at that time. He emphasizes that he was paid nothing for his work in the corporate case and seeks no payment for it.

This Court has repeatedly addressed the fundamental issue presented: whether a proposed professional's representation of a debtor's partner, equity holder, creditor, corporation or other interested party constitutes representation of an adverse interest within the prohibition of § 327(a). *See*, *e.g.*, *In re Alleged*

MEMORANDUM OF DECISION - 7

*P'ship of Ashbaugh & Hall*, No. 04-04184-TLM at Doc. No. 20 (Bankr. D. Idaho filed Jan. 6, 2005); *In re Thompson*, No. 00-00013, 2000 WL 33716961 (Bankr. D. Idaho Mar. 1, 2000); *In re MDR, Inc.*, 00.1 I.B.C.R. 37, 1999 WL 33486707 (Bankr. D. Idaho 1999); *In re Dugger*, 99.1 I.B.C.R. 30 (Bankr. D. Idaho 1999); *In re Leypoldt*, 95 I.B.C.R. 220, 1995 WL 562183 (Bankr. D. Idaho 1995); *In re Bliss Valley Foods, Inc.*, 88 I.B.C.R. 281 (Bankr. D. Idaho 1988), and 89 I.B.C.R. 4 (Bankr D. Idaho 1989) (denying motion to alter or amend).[8]

The simple fact of the matter is that each chapter 11 debtor in possession here, Debtors in Case 04-21810-TLM and Diversified in Case No. 02-21851-TLM, owed fiduciary duties to the creditors of their respective estates. Counsel could not simultaneously fulfill the role of counsel to each. One or the other had to find and retain separate counsel.[9] *See Thompson*, 2000 WL 33716961 at *4; *MDR*, 00.1 I.B.C.R. at 38; *Bliss Valley Foods*, 88 I.B.C.R. at 285-87, and 89 I.B.C.R. at 5-6.

Counsel conceded that, in the absence of substantive consolidation of the two chapter 11 cases and estates, separate counsel for Diversified would be required. Counsel thus effectively undermines his own argument. Regardless of his considered opinion on whether an alter ego or veil-piercing contention would

---

[8] *Ashbaugh & Hall* also noted other decisions from outside the District, including *In re Granite Partners, L.P.*, 219 B.R. 22 (Bankr. S.D.N.Y. 1998), and *In re TMA Assocs., Ltd.*, 129 B.R. 643 (Bankr. D. Colo. 1991). *See* Case No. 04-04184-TLM, Doc. No. 20 at 9 n.10.

[9] There could be situations where the nature of the representation and adverse interest is such that both entities would need new counsel, and the professional would be disqualified from representing either under § 327(a). The Court need not reach that question here.

MEMORANDUM OF DECISION - 8

be successful, until consolidation was actually ordered, the chapter 11 debtors and their bankruptcy estates were separate.

The entire subject of substantive consolidation is rife with discussion over the potential for adverse impact on creditors of one estate or the other if the assets and liabilities of two debtors are merged into one.[10]  Each of the debtors was entitled to unbiased and fully independent counsel on this issue of whether the cases should be consolidated.  Each of the debtors also owed duties to the creditors of their respective estates, and those duties could not be fulfilled with a single lawyer's advice and representation.

Counsel acknowledged during the March 1 hearing that the § 327(a) issue would here have been avoided had Diversified retained and appeared through independent counsel and then, after substantive consolidation was ordered, that attorney resigned or withdrew, leaving Counsel as the § 327(a) lawyer for the then-combined estates.

Counsel argues, though, that requiring a second lawyer, especially for what might be a limited period of time, elevates form over substance and increases the financial burden on Diversified.  The perhaps unfortunate truth is that the strict

---

[10] It is not all that difficult to imagine a situation where a creditor in one case (*e.g.*, the corporation's) might not fare as well if all its debtor's assets and liabilities were merged with those of another entity, diluting the distribution it might otherwise expect to receive or the relative leverage it enjoyed.  In large part, that is the rationale for the heightened due process required in substantive consolidation proceedings.  *See*, *e.g.*, *Bonham*, 229 F.3d at 766-69; *In re Luth/In re Worley Grain Co., Inc.*, 83 I.B.C.R. 31 (Bankr. D. Idaho 1983).

MEMORANDUM OF DECISION - 9

independence and accountability required by § 327(a) can increase administrative expenses. This, in the eyes of the drafters of the Code and virtually all those courts and commentators interpreting it, is an appropriate price to pay for the assurance that chapter 11 debtors and their professionals have but one allegiance. Bankruptcy Judge Alfred C. Hagan clearly articulated this position in the *Bliss Valley Foods* decisions. *See Ashbaugh & Hall*, Case No. 04-04184-TLM, Doc. No. 20 at 11 n.15 (quoting 88 I.B.C.R. at 286, and 89 I.B.C.R. at 5-6).[11]

The existence of adverse interest is sufficient for disqualification of Counsel under § 327(a), and the Court need not weigh, measure or evaluate the degree or extent of conflict. *See, e.g., In re Larson*, 04.1 I.B.C.R. 20, 23 (Bankr. D. Idaho 2004) (citing *In re Overacker*, 02.1 I.B.C.R. 55, 56 (Bankr. D. Idaho 2002), *Dugger*, 99.1 I.B.C.R. at 32, and *First Interstate Bank of Nevada, N.A. v. C.I.C. Inv. Corp. (In re C.I.C. Inv. Corp.)*, 175 B.R. 52, 56 (9th Cir. BAP 1994)). This extends to arguments that the Court should attempt to distinguish "actual" from "potential" conflicts, as that is an imprecise and ultimately unnecessary exercise. *Thompson*, 2000 WL 33716961 at *4 (citing *Leypoldt*, 95 I.B.C.R. at 223); *Bliss Valley Foods*, 89 I.B.C.R. at 5. It also extends to the argument that any conflict or adversity here was expected to be of limited duration.

---

[11] The prior decisions of this Court in *Thompson* and *MDR*, like *Bliss Valley Foods*, concerned dual representation of corporations and their equity holders, as presented here. Each reaches the same conclusion.

MEMORANDUM OF DECISION - 10

In light of the controlling authorities, Counsel's approach to the problem was ill advised. However, the Court does not view Counsel's conduct or arguments as improperly motivated. While errors of analysis were surely made, there was no evidence presented to contradict Counsel's representations that he was trying his best to accommodate the financial and other needs of the Debtors and both the estates and reduce administrative expense. He sincerely believed that consolidation was appropriate and would be ordered by the Court upon proper presentation (a determination never reached due to the inability of Debtors and Diversified to operate profitably and continue their efforts at reorganization). The cases were not prolonged without realistic hope of success. Counsel's services were reasonable in nature and degree, and the charges for those services were reasonable in amount. Though Counsel had fundamental disagreements with the UST on matters of law and policy, he (like the UST) presented his arguments with civility and professionalism.

This in some ways makes difficult the conclusion that Counsel was and is disqualified from employment by Debtors. But the obligation of the Court is to fairly and evenly apply the law. It cannot manufacture an "equitable" exception. *See Ashbaugh & Hall*, Case No. 04-04184-TLM, Doc. No. 20 at 13 n.16. Nor may it simply overlook or excuse the lack of compliance with § 327(a). *Accord*, *In re Dearborn Const., Inc.*, 03.1 I.B.C.R. 17, 24, 2002 WL 31941458 (Bankr. D. Idaho

MEMORANDUM OF DECISION - 11

2003) (discussing *In re Combe Farms, Inc.*, 257 B.R. 48, 53-54, 01.1 I.B.C.R. 7, 9 (Bankr. D. Idaho 2001)). Because Counsel was not qualified under § 327(a), his employment as chapter 11 counsel by Debtors cannot be approved.[12]

Further, because Counsel's employment cannot be and is not approved, he cannot be compensated for his services in the chapter 11 case. The application under § 330, Doc. No. 35, must therefore also be denied.[13]

**CONCLUSION**

"The burden of proving the absence of an adverse interest, and establishing the propriety of the suggested employment, is upon the applicant and the proposed professional." *Thompson*, 2000 WL 33716961 at *5. That burden was not carried here. As a result, the application, Doc. No. 6, cannot be approved. Consequently, the application for approval of chapter 11 compensation, Doc. No. 35, will also be denied. The UST's objections to both applications will be sustained to the extent indicated herein, and the UST shall submit an appropriate form of order.

---

[12] The conclusion on this issue makes it unnecessary to resolve the objection the UST advanced on the theory that the lien interest Counsel took in the retainer separately required disqualification, either due to its allegedly inadequate disclosure or due to the adversity of interest at the time Debtors sought use of cash collateral. *See generally Dearborn Const.*, 03.1 I.B.C.R. at 20-23 (discussing and finding that claiming a lien of this sort, if properly disclosed at the outset, is not a *per se* disqualifying event).

[13] The denial of the § 327(a) and § 330 applications has yet another consequence. The lien held by Counsel was to secure payment for the services that might be allowed by the Court. It now secures no allowable claim. Presumably, the funds in the retainer must be turned over to the chapter 7 trustee of Debtors' estate for administration. *See Larson*, 04.1 I.B.C.R. at 24.

MEMORANDUM OF DECISION - 12

DATED: March 17, 2005



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 13

## CERTIFICATE RE: SERVICE

A "notice of entry" of this Decision, Order and/or Judgment has been served on Registered Participants as reflected by the Notice of Electronic Filing. A copy of the Decision, Order and/or Judgment has also been provided to non-registered participants by first class mail addressed to:

    Charles R. Dean, Jr.
    DEAN & KOLTS
    2020 Lakewood Drive, #212
    Coeur d'Alene, ID 83814

Case No. 04-21810-TLM (John A. Oliveira)

Dated: March 17, 2005

 /s/
Jo Ann B. Canderan
Judicial Assistant to Chief Judge Myers

MEMORANDUM OF DECISION - 14